UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TAMMY DIANE BREWER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 2:13-CV-28 |
| ) | (JORDAN/SHIRLEY) |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13, 14] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16, 17]. The Plaintiff Tammy Diane Brewer seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner").

The Plaintiff filed her application for a period of disability and disability insurance benefits under the Social Security Act on January 28, 2010, alleging disability since September 19, 2005, due to gout, migraine headaches, fibromyalgia, mild blockage in the right front of the heart, degenerative disc disease, and depression. Her application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ Keith C.

1

Pilkey, in Kingston, Tennessee, on July 21, 2011. The Plaintiff was present and testified. The ALJ issued an unfavorable decision on August 29, 2011, finding that the Plaintiff capable of sedentary work. The Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant last met the insured status requirement of the Social Security Act on December 31, 2010.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 19, 2005 through her date last insured of December 31, 2010.
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and depression (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) which involves no climbing ladders, otherwise frequent postural activities with occasional overhead reaching. The individual would be limited to infrequent interaction with the general public, a workplace that involves gradual and infrequent changes and simple, detailed tasks.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on May 21, 1963 and was 47 years old,

2

which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 19, 2005, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).

[Tr. 15-23].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, the plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a

3

Case 2:13-cv-00028-RLJ-CCS   Document 18   Filed 02/05/14   Page 3 of 20   PageID #: 454

disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless. See Wilson, 378 F.3d at 546-47

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV. POSITIONS OF THE PARTIES**

The Plaintiff raises three allegations of error: (1) the hypothetical question the ALJ asked the vocational expert ("VE") did not adequately reflect the Plaintiff's impairments; (2) the number of jobs stated by the VE did not constitute a significant number; and (3) it is unclear whether the jobs enumerated by the VE qualified as sedentary jobs as defined by the Dictionary of Occupational Titles ("DOT"). [Doc. 14 at 8-11]. Based upon these alleged errors, the Plaintiff argues that the ALJ's decision was not supported by substantial evidence. [Id.].

The Commissioner argues that substantial evidence supports the ALJ's finding that the Plaintiff is not disabled. [Doc. 17 at 4]. Specifically, the Commissioner asserts that the Plaintiff failed to prove she had greater limitations than those posed to the VE, and therefore, the hypothetical question accurately reflected the Plaintiff's impairments. [Id. at 5]. The Commissioner also argues that the number of jobs cited by the VE constituted a significant number of jobs in the regional and national economy. [Id. at 10]. Finally, the Commissioner maintains that the ALJ properly relied on the VE's testimony because the there was no conflict

between the VE's testimony and the DOT. [Id. at 15-16].

V.   ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

A.   **Vocational Hypothetical**

The Plaintiff argues that the ALJ erred by asking the VE a hypothetical question which did not include all of the Plaintiff's mental limitations. [Doc. 14 at 8]. Specifically, the Plaintiff argues that the hypothetical does not adequately reflect the Plaintiff's limitation in her ability to concentrate, persist, and keep pace. [Id.].

During the hearing the ALJ asked the following hypothetical question to the VE:

> Q: Let's assume a hypothetical individual the same age, education, and past relevant work experience as the claimant. Let's assume further that this person is limited in the following manner: sedentary exertion, no climbing of ladders, otherwise frequent postural activities; overhead reaching is limited to an occasional basis and this person would be limited to infrequent interaction with the general public, also to a workplace that involves gradual and infrequent changes; limited to simple details tasks. Based upon the hypothetical, would there be jobs in the regional or national economy that the hypothetical individual could perform?
>
> A: The examples I have are escort driver – 1,600 locally, 141,000 U.S.; there are assemblers – 160 locally and 3,800 national economy; there are staplers/gluers – 800 locally, 46,000 U.S.; and a reduced range of office assistant – 1,800 locally, 47,000 United States.

[Tr. 41-42].

The parties appear to dispute whether the hypothetical question accurately reflects the findings opined in a form entitled "Mental Residual Functional Capacity Assessment" ("Mental

7

RFC Assessment"), completed by state agency psychological consultant Edward L. Sachs, Ph.D., on January 12, 2011. [Docs. 14 at 8-9, 17 at 6-7]; [Tr. 364-66]. The ALJ assigned great weight to this assessment, finding that the Plaintiff had minimal psychiatric limitations. [Tr. 22].

There are three sections to the mental RFC assessment. Relevant to this case, however, are Sections I and III.[1] Section I is entitled "Summary Conclusions" and is used "for recording summary conclusions derived from the evidence in file." [Tr. 364]. Under Section I, the medical consultant evaluates the claimant's mental ability in four specific categories: (A) Understanding and Memory; (B) Sustained Concentration and Persistence; (C) Social Interaction; and (D) Adaption. [Tr. 364-65]. Under each category are a number of specific mental functions, 20 in total, which must be evaluated using one of the five following ratings: "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," and "not ratable on available evidence." [Id.]. Each function is evaluated within the context of the claimant's "capacity to sustain that activity over a normal workday and workweek on an ongoing basis." [Tr. 364]. Once Section I is completed, the medical consultant is instructed to provide a "[d]etailed explanation of the degree of limitation for each category, as well as any other assessment information you deem appropriate," under Section III. [Id.]. Section III is entitled "Functional Capacity Assessment." [Tr. 366]. Under this section, the medical consultant is instructed to "[r]ecord the elaboration of the preceding capacities" by explaining "your summary conclusion in narrative form." [Id.].

Under Section I, Dr. Sachs opined that the Plaintiff was "not significantly limited" for a majority of the mental functions listed under each category. [Tr. 364-66]. However, Dr. Sachs

---

[1] Section II, entitled "Remarks," instructs the medical consultant to provide additional documentation that is needed to rate an impartment marked under Section I as "not ratable on available evidence." No such rating was recorded under Section I, and therefore, Section II has been left blank and was not used to explain the Plaintiff's mental RFC.

8

opined that the Plaintiff had "moderate limitations" with the following five functions: the ability to maintain attention and concentration for extended periods of time; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and perform at a consistent pace without an unreasonable number or breaks; the ability to interact appropriately with the general public; and the ability to respond appropriately to changes in the work setting. [Tr. 364-65].

Based upon these Section I findings, Dr. Sachs provided the following summary under Section III regarding the Plaintiff's mental RFC: the Plaintiff can perform simple and detailed tasks over a full workweek; she can maintain schedule and attendance within acceptable tolerance; she can interact infrequently or 1-1 with the general public as well as meet basic social demands; and she can adapt to gradual or infrequent changes. [Tr. 366].

The Court finds that the ALJ's hypothetical adequately described what the Plaintiff can and cannot do as opined by Dr. Sachs under Section III. In order for substantial evidence to support an ALJ's reliance on a VE's answer to a hypothetical question, the question must accurately reflect a plaintiff's physical and mental impairments. <u>Varley v. Sec'y of Health & Human Servs.</u>, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). Here, the ALJ included the specific mental limitations that the Plaintiff would be "limited to infrequent interaction with the general public, also to a workplace that involves gradual and infrequent changes[, and] limited to simple detailed tasks." The only other Section III findings that were not incorporated into the hypothetical was the Plaintiff's *ability* to maintain schedule and attendance within acceptable tolerances and meet basic social demands in a work setting. An ALJ is not under an obligation to enumerate verbatim every Section III finding so long as the hypothetical accurately portrays a

9

plaintiff's impairments. McLean v. Colvin, No. 3:11-CV-00236, 2013 WL 4507807, at *11 (M.D. Tenn. Aug. 23, 2013) (citing Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011)). The Court finds that the hypothetical adequately represents the Plaintiff's mental limitations under Section III.

The Plaintiff cites to Ealy v. Comm'r of Soc. Sec., 594 F.3d 504 (6th Cir. 2010) for the proposition that the ALJ's failure to include a limitation concerning the Plaintiff's ability to concentrate, persist, and keep pace constitutes reversal error. No such limitation was specifically noted under Section III. [Tr. 366]. However, under Section I, Dr. Sachs checked a boxed indicating that the Plaintiff was "moderately limited" in her "ability to maintain attention and concentration for extended periods." [Tr. 364]. This function was listed under category (B) Sustained Concentration and Persistence. [Id.]. Thus, the Court presumes that the Plaintiff's argument rests upon the proposition that the hypothetical should have also reflected the more specific findings enumerated under Section I.

In Ealy, the Sixth Circuit specifically declined to answer "whether and under what circumstances it is sufficient for an ALJ to include in a vocational hypothetical only the Section III Functional Capacity Assessment and not also the more specific checked limitations in Section I." 594 F.3d at 516. The Court of Appeals found that even assuming that Section III sufficiently incorporated all the limitation noted under Section I, the hypothetical did not adequately provide a fair summary of those conclusions. Id. Specifically, the ALJ had credited the Mental RFC Assessment conducted by a state agency psychological consultant who had opined under Section III that the plaintiff was limited in his "ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" Id. Because the ALJ relied on the assessment but did not include a speed- and pace-based restriction

10

in the hypothetical, the Court of Appeals held that the hypothetical did not fully convey the plaintiff's limitations, and, therefore, substantial evidence did not exist that a significant number of jobs existed that the plaintiff was capable of preforming. Id. at 517.

In the present matter, the Commissioner argues that Ealy is distinguishable because "[u]nlike in Ealy, the ALJ's hypothetical question here accounted for all of the findings in the Section III Functional Capacity Assessment of the state agency consulting psychologist's mental RFC assessment," and, thus, the "hypothetical question to the VE properly accounted for Dr. Sachs's Section III findings." [Doc. 17 at 6-7]. Moreover, the Commissioner cites to the Court the Program Operations Manual System ("POMS") in support of her argument. [Id. at 7-8].

The POMS provides a description of the Mental RFC Assessment form, explaining the purpose of each section. Section I Summary Conclusion is described as "**merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment.**" Id. (citing POMS § DI 24510.060(B)(2)(a), http://policy.ssa.gov/poms.nsf/lnx/0424510060 (last visited Nov. 20, 2013)) (emphasis in the original). POMS further explains that Section III Functional Capacity Assessment "is for recording the mental RFC determination," and "[i]t is in this section that the **actual mental RFC assessment is recorded**, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." Id. (emphasis in the original). Although the Sixth Circuit has declined to answer whether a vocational hypothetical must also reflect Section I findings, other district courts have answered in the negative by relying on the POMS.

In Wildman v. Astrue, No 2:10-CV-024, 2011 WL 111711, at *4 (E.D. Tenn. Jan. 13, 2011) (J. Jordan), the plaintiff argued that the ALJ erred by ignoring certain limitations that were

11

marked as moderate under Section I. The District Court turned to the POMS for guidance and found that because Section III provides "the actual mental RFC assessment," the ALJ did not commit reversal error by adopting the Section III findings only. Id. Other sister courts have followed suit, holding that a vocational hypothetical need only reflect the findings discussed in Section III. See Joiakim v. Comm'r of Soc. Sec., No. 10-11079, 2011 WL 1120043, at *6 (E.D. Mich. Mar. 8, 2011), adopted by No. 10-11079, 2011 WL 1134655, at *1 (E.D. Mich. Mar. 25, 2011); Velez v. Comm'r of Soc. Sec., No. 1:09CV0715, 2010 WL 1487599, at *6 (N.D. Ohio Mar. 26, 2010) adopted by No. 1:09CV715, 2010 WL 1487729, at *1 (N.D. Ohio Apr. 13, 2010); Liggett v. Astrue, No. 08-1913, 2009 WL 189934, at *8 (E.D. Pa. Jan. 27, 2009); Berry v. Astrue, No. 1:08CV00005, 2009 WL 50072, at *16 (W.D. Va. Jan. 7, 2009); Norris v. Astrue, No. 7:07-CV-184-FL, 2008 WL 4911794, at *16 (E.D.N.C. Nov. 14, 2008); Malueg v. Astrue, No. 06-C-676-S, 2007 WL 5480523, at *6-7 (W.D. Wis. May 30, 2007). Furthermore, the POMS is "viewed as persuasive authority" in the Sixth Circuit. Kirves v. Callahan, No. 96-5179, 1997 WL 210813, at *3 (6th Cir. 1997).

Based upon the foregoing, the Court finds that the ALJ's incorporation of the Section III findings into his hypothetical adequately and fairly reflected the Plaintiff's mental RFC. Therefore, the ALJ's failure to include the more specific moderate limitation outlined under Section I did not constitute reversal error.

Accordingly, the Plaintiff's allegation of error in this regard is not well-taken.

### B. Significant Number of Jobs

The Plaintiff also challenges the VE's testimony concerning the number of jobs in the local and national economy that the Plaintiff could perform, arguing that the testimony did not

demonstrate that a significant number of jobs existed.

In response to the hypothetical question, the VE responded with examples of jobs that existed in the regional and national economy that the Plaintiff could perform despite the physical and mental limitations placed on the Plaintiff. [Tr. 42]. These jobs included an escort driver, 1,600 locally and 141,000 nationally; an assembler, 160 locally and 3,800 nationally; staplers/gluers, 800 locally and 46,000 nationally; and a reduced range of office assistants, 1,800 locally and 47,000 nationally. [Id.].

At step five of the sequential evaluation process, the burden shifts to the Secretary to prove that work exists in the regional and national economy which the claimant is capable of performing based upon the claimant's RFC, age, education, and work experience. Walters, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520(g)(1)). "Work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). In determining what constitutes a significant number of jobs, some of the criteria a reviewing court may consider include: "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988).

The Plaintiff argues that the ALJ erred by failing to make any inquiry into the criteria set forth in Hall. To the contrary, the Court finds that the ALJ addressed a number of factors in

13

determining the Plaintiff's impairments and their severity.

Specifically, the ALJ set forth a detailed analysis discussing the Plaintiff's claims of gout, migraine headaches, fibromyalgia, and heart problems by reviewing the medical evidence of record and setting forth his reasoning as to why he did not find that these conditions were severe. [Tr. 12-14]. Moreover, the ALJ discussed medical listing 12.04, finding that the Plaintiff did not meet the "paragraph B" criteria. [Tr. 14-15]. The ALJ also discussed over a dozen treatment notes dated from April 2008 through July 2011, in which he found that the Plaintiff suffered severe impairments due to degenerative disc disease and depression. [Tr. 16-17]. Additionally, the ALJ made a credibility finding regarding the Plaintiff's allegations of pain. [Tr. 18]. The ALJ noted that the Plaintiff's reported activities, which consisted of doing laundry, preparing meals, cleaning, caring for her husband, stepson, pets, and rose bushes, shopping bi-weekly, painting, and moving furniture, among other noted activities, was evidence that failed "to substantiate the claimant's allegations of total disability." [Id.]. The ALJ also reviewed opinion evidence from three state agency medical consultants. [Tr. 19]. Finally, the ALJ made specific findings regarding the number of jobs available that the Plaintiff is capable of performing by discussing the testimony of the VE. [Tr. 19-20].

Given the ALJ's detailed discussion of the record as a whole, the Court cannot seriously entertain the Plaintiff's contention that the ALJ failed to make any inquiry into the <u>Hall</u> criteria. The Court also rejects the proposition, to the extent that it is made, that every factor listed in <u>Hall</u> must expressly be weighed. The listed criteria is a non-exhaustive list of factors that "might" be considered when determining what constitutes a "significant number." <u>Hall</u>, 837 F.2d at 275. To be sure, <u>Hall</u> instructs that the criteria to be weighed is a decision that "should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a

14

particular claimant's factual situation." Id.

The Plaintiff also argues that the VE's testimony does not constitute a significant number of jobs because the numbers cited by the VE only equates to roughly one-tenth of one percent of the total jobs in the national economy. [Doc. 14 at 12]. The Plaintiff bases her calculation by citing to the Bureau of Labor Current Employment Statistics which estimates that there were 135,046,000 jobs in in the national economy as of February 2013. [Id.].

The Sixth Circuit, however, has expressly rejected the Plaintiff's percentage argument. "[W]hen there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area." Hall, 837 F.2d at 275. There is no special number establishing "the boundary between a 'significant number' and an insignificant number of jobs," which is why a reviewing court is instructed to make such a determination on a case-by-case basis using a common sense approach. See id.

Similar numbers as the ones presented by the VE in this case have been found to establish the existence of a significant number of jobs. See Bradley v. Comm'r of Soc. Sec., 40 F. App'x 972, 973 (6th Cir. 2002) (finding that 1,150 unskilled, sedentary jobs in the region and 170,000 such jobs in the national economy constituted a substantial number of jobs); Stewart v. Sullivan, No. 89-6242, 1990 WL 75248, at *4 (6th Cir. June 6, 1990) (finding that 125 regional jobs and 400,000 national jobs constituted a significant number of jobs); Kroeger v. Astrue, No. 2:11-CV-255, 2012 WL 3990794, at *7 (E.D. Tenn. Aug. 23, 2012) adopted by No. 2:11-CV-255, 2012 WL 3996755, at *1 (E.D. Tenn. Sept. 11, 2012) (finding that 265 regional and 155,000 national jobs constituted a significant number).

15

The Court finds no distinction between the cited cases and the case at bar, and, therefore, the Court finds that the VE's testimony constitutes a significant number of jobs in the regional and national economy.

Lastly, the Plaintiff argues that the VE's testimony does not constitute a substantial number of jobs because the ALJ failed to consider the impact of Social Security Ruling 96-9p, 1996 WL 374185, at *1 (1996). [Doc. 14 at 10-11]. Specifically, the Plaintiff takes issue with the VE's testimony in which the VE stated that a proportion of the unskilled, sedentary jobs base is eroded by forty to fifty-five percent based on the additional assumptions contained in the ALJ's hypothetical. [Id.; Tr. 42]. The Plaintiff maintains that such erosion is substantial. [Doc. 14 at 11].

In pertinent part, Social Security Ruling 96-9p provides the following:

> [T]he ability to do even a limited range of sedentary work does not in itself establish disability in all individuals, although a finding of "disabled" usually applies when the full range of sedentary work is significantly eroded . . . . In deciding whether an individual who is limited to a partial range of sedentary work is able to make an adjustment to work other than any [past relevant work], the adjudicator is required to make an individualized determination, considering age, education, and work experience, including any skills the individual may have that are transferable to other work, or education that provides for direct entry into skilled work, under the rules and guidelines in the regulations.

1996 WL 374185 at *2. The ruling goes on to explain that an ALJ may ask a vocational expert to provide "[a]n analysis of the impact of the RFC upon the full range of sedentary work, which the adjudicator may consider in determining the extent of the erosion of the occupational base." Id. at *9.

The Court finds that there is no significant erosion of jobs in this case. The Court has already found that the VE's testimony constitutes a substantial number of jobs and testimony

16

concerning erosion does not change the Court's opinion.  The number of jobs cited by the VE was the amount that existed *after* taking into account the forty to fifty-five percent erosion.  As the ALJ explained:

> The undersigned notes the claimant's attorney asked the vocational expert what portion of the sedentary job base would be eroded by the assumptions contained in the hypothetical question.  The vocational expert stated at least 40% to 55%; however, the undersigned notes that the jobs enumerated by the vocational expert contained the additional limitations as addressed by the representative.  As such, the representative's inquiry is considered redundant.

[Tr. 20].

The Court agrees with the ALJ's analysis.  Accordingly, the Court finds that the ALJ properly considered Social Security Ruling 96-9p and did not commit reversal error in this respect.

### C. Conflict between the VE's Testimony and the DOT

Finally, the Plaintiff argues that it is unclear whether the jobs enumerated by the VE, other than an escort driver, are in fact sedentary jobs as defined by the DOT. [Doc. 14 at 11].  In support of her argument, the Plaintiff asserts that the DOT does not include a stapler or an office assistant, although an officer helper is described as light work, that a gluer is described as light work as well, and that it is unclear what assembler job the VE was referring to. [Id.].

In Beinlich v. Comm'r of Soc. Sec., 345 F. App'x 163, 167 (6th Cir. 2009), the Sixth Circuit addressed a similar issue as the one raised by the Plaintiff.  In that case, the ALJ relied on the VE's testimony that the plaintiff could perform work at the sedentary, unskilled level. Id. at 165-66.  The plaintiff argued that the VE's testimony conflicted with the DOT because the jobs

17

enumerated by the VE included "production worker" which was not listed in the DOT, and the other jobs attested to, namely, office clerk, inspector, and tester, were occupations described by the DOT as requiring light exertion and skill levels beyond unskilled. Id. at 167.

The Court of Appeals rejected the plaintiff's argument, finding that the plaintiff "failed to identify a conflict between the DOT and the VE's testimony simply because 'production worker' is not identified with that name in the DOT." Id. (citing Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605 (6th Cir. 2009)). Moreover, the Sixth Circuit was not persuaded by the plaintiff's argument that the positions of office clerk, inspector, and tester were listed in the DOT with different levels of exertion and skill then that assigned to the plaintiff. Id. The Court explained:

> not all occupations are included in the DOT, and the VE may use terminology that differs from the terms used in the DOT. See [Lindsley, 560 F.3d at 605] ("The fact, therefore, that a VE and the DOT might use different terminology to describe employment positions does not establish that a conflict exists between these sources of evidence."). The VE testified that there are a subset of jobs for unskilled and sedentary office clerks, inspectors, and testers who have the rest of the plaintiff's limitations; the mere fact that the DOT does not list occupations with those precise terms does not establish that they do not exist. The function of the VE is to advise the ALJ of jobs found among various categories of employment which the plaintiff can perform with her limitations.

Id.

Here, the VE specifically took into consideration the Plaintiff's physical and mental RFC, as well as her age, education, and past relevant work experience before opining that she was nonetheless capable of performing the job of an escort driver, an assembler, a stapler/gluer, and a reduced range of office assistant. The Court finds that the Plaintiff's argument that a conflict exists merely because the occupations listed by the VE cannot be found under identical term names and exertion levels in the DOT does not present an actual conflict. "The DOT lists

18

maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *3 (2000). Therefore, a VE "may be able to provide more specific information about jobs or occupations than the DOT." Id. As a result, a VE is permitted to rely on sources other than the DOT in evaluating a hypothetical. See 20 C.F.R. § 404.1566(d). In the present matter, the VE did not testify that she relied on any specific section of the DOT nor was she obligated to.

Moreover, the ALJ complied with Social Security Ruling 00-4p which places an affirmative responsibility on the ALJ to ask the VE whether her testimony was consistent with the DOT. 2000 WL 1898704 at *4. The ALJ specifically asked the VE whether her testimony was consistent with the DOT in which the VE responded in the affirmative. [Tr. 42]. Plaintiff's counsel had the opportunity to question the VE about any perceived inconsistencies or conflicts and did not do so. Because the VE confirmed that her testimony did not conflict with the DOT, the Court finds that the ALJ had no duty to make any further inquiry regarding a possible conflict before relying on the VE's testimony. See Soc. Sec. Rul. 00-4p, 2000 WL 1898704 at *4.

Accordingly, the Court finds that the Plaintiff's allegation of error in this regard is not well-taken.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] be **DENIED** and that the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED**.

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).